UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                                                          Bankruptcy No. 07-30588
                                                                                Chapter 7
Michael J. Domitrovich,

                Debtor.
_____/

**MEMORANDUM AND ORDER**

This case is before the Court on the objection of Kip M. Kaler, the bankruptcy trustee, filed November 2, 2007, to the claimed exemptions of Debtor Michael J. Domitrovich. Specifically, the trustee objects to the claimed exemption of seven accounts receivable, $100.00 cash, and two checking accounts pursuant to N.D.C.C. §§ 28-25-11 and 28-22-18. The trustee also filed a motion for turnover of these assets on November 2, 2007. Both matters were heard on December 5, 2007.

I.  Factual Background

Debtor owns and operates a consulting business, City View, as a sole proprietorship. Debtor's clients include engineers, architects, realtors and landowners. Debtor provides various services including urban design, master planning, site analysis, schematic design, and representation of clients throughout the planning process. Debtor charges an hourly fee that varies depending on the nature of work performed. He also charges a mileage fee. Although he does not have any employees, Debtor hires a registered landscape architect, Dominic Fischer, to perform certain work for City View. Fischer bills City View monthly for each project, and Debtor pays Fischer once Debtor receives a payment from a client.

Debtor signed several contracts prior to his bankruptcy filing. He testified that he typically, but not always, has a contract with his clients. At the first of each month, Debtor sends his clients a bill for the previous month, and he usually gets paid within 30 days.

At the time of his bankruptcy filing, Debtor was performing work on four projects. Debtor billed $5,976.75 for work performed in June 2007 on the Prairie Grove project. He received payment in full and deposited the check on July 16, 2007, three days after he filed bankruptcy. Debtor paid Fischer $912.50 out of the payment he received. Between July 1, 2007, and July 13, 2007, Debtor performed services for Prairie Grove totaling $4,030.50. Fisher was paid $612.50 for work performed during these dates.

Debtor was also working on a project known as Maple Valley at the time of his bankruptcy. During June 2007, Debtor performed services in the amount of $4,851.00. He received payment for these services on August 1, 2007. Between July 1 and July 13, Debtor performed services for Maple Valley totaling $1,389.75. Debtor paid Fischer $100.00 for work performed during these dates.

Another ongoing project at the time of Debtor's bankruptcy filing was the Stockwood Business Park. In June 2007, Debtor performed services totaling $1,735.50. He received payment for those services on August 1, 2007. Between July 1 and July 13, 2007, Debtor performed services totaling $1,167.00.

Debtor was also working on the Water's Edge project at the time of his filing. Debtor earned approximately $480.00 for services on this project during July 2007 prior to filing bankruptcy. Fischer was owed $262.50 out of those earnings for his services.

Debtor keeps a business bank account. All income goes into the account, and all expenses are paid out of the account. He also takes draws from the account, but not on a regular basis. He testified that the money comes in periodically so he writes checks to himself to pay the bills.

Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on July 13, 2007. Debtor listed the City View contracts as executory contracts on his amended Schedule

G filed on October 29, 2007. He listed seven City View accounts receivable as exempt under N.D.C.C. §§ 28-22-18 and 28-25-11 on amended Schedule B. He also claimed $100.00 cash, $1,238.07 in a business checking account, and his one-half interest in $165.84 in a joint personal checking account held with his wife as exempt under N.D.C.C. §§ 28-22-18 and 28-25-11. The only source of funds in the business checking account came from Debtor's business. The funds in the joint personal checking account came from Debtor's business and Debtor's wife's earnings.

## II. Conclusions of Law

Debtor first argues that the accounts receivable, checking account balances, and cash stem from executory contracts deemed rejected by the trustee and are not property of the bankruptcy estate.

At the time a debtor files a Chapter 7 petition, a bankruptcy estate is created which is comprised of all of the debtor's legal and equitable interests in property at the time of filing. 11 U.S.C. § 541(a)(1). Property of the estate includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor *after* the commencement of the case. 11 U.S.C. § 541(a)(6) (emphasis added). Regardless whether the contracts at issue in this case are executory, Debtor's earnings from services performed before the commencement of the case constitute property of the estate. See Turner v. Avery, 947 F.2d 772, 774 (5th Cir. 1991) (fees earned on debtor's executory contracts prior to the bankruptcy filing were part of the bankruptcy estate, even though the contracts themselves were not assumable by the trustee and were not included in property of estate, to the extent that fees were earned before bankruptcy filing); Delightful Music Ltd. v. Taylor (In re Taylor), 913 F.2d 102, 106 (3rd Cir. 1990) (to the extent that money is due a debtor for prepetition services under a personal

3

services contract, the debtor's claim to those sums is undoubtedly an asset of the estate which passes to the trustee regardless whether the trustee later affirms or rejects the contract); Jess v. Carey (In re Jess), 215 B.R. 618, 621 (B.A.P. 9th Cir. 1997) ("the fact that postpetition services are necessarily performed does not cause the right to payment for prepetition services to be excluded from the estate"). Debtor's argument that the assets at issue are not property of the estate because they are proceeds from executory contracts is therefore without merit.

Next, Debtor listed the accounts receivable, checking accounts, and cash as exempt under N.D.C.C. §§ 28-22-18 and 28-25-11(1). The trustee objected.

Section 522(b)(2)(A) of the Bankruptcy Code permits a debtor to exempt from the bankruptcy estate any property that is exempt under federal, state, or local law applicable on the date of the petition filing. 11 U.S.C. § 522(b)(2)(A). North Dakota is among the majority of states that have chosen to "opt out" of the federal exemption scheme and limit its residents to the exemptions allowable under North Dakota law. See N.D.C.C. § 28-22-17. The party objecting to a debtor's exemptions has the burden of proving that the exemptions are not properly claimed. Fed. R. Bankr. P. 4003(a).

Section 28-22-18, N.D.C.C., provides that "[t]he wages of a debtor are exempt from all process or levy only to the extent provided in section 32-09.1-03." Section 32-09.1-03 provides in relevant part:

>  1. The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment may not exceed the lesser of:
>     1. Twenty-five percent of disposable *earnings* for that week.
>     2. The amount by which disposable *earnings* for that week exceed forty times the federal minimum hourly wage . . . or any equivalent multiple thereof prescribed by regulation by the secretary of labor in case of *earnings* for any pay period

>
> other than a week, in effect at the time the *earnings* are payable.

N.D.C.C. § 32-09.1-03 (emphasis added). "Earnings" is defined in relevant part as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program." N.D.C.C. § 32-09.1-01.

The assets at issue in this case – Debtor's accounts receivable, checking accounts, and cash – may constitute earnings as defined by section 32-09.1-01 and provided for under section 32-09.1-03. Debtor asserts they are earnings because they are compensation paid or payable for his personal services. The assets may not constitute earnings, on the other hand, because they include other components such as compensation for Fischer's services and reimbursement for Debtor's expenses. Moreover, the examples of compensation for personal services enumerated in the definition of earnings all apply only in typical employer-employee settings. See N.D.C.C. § 32-09.1-01. Wages, salaries, commissions, bonuses, and pensions or retirement benefits are all compensation for personal services paid by employers to employees. See id. The definition of "earnings" includes "or otherwise," but this phrase should be confined to designations similar to those listed. Id.; see also Eilbert v. Pelican (In re Eilbert), 162 F.3d 523, 527 (8th Cir. 1998) (discussing *ejusdem generis*, a canon of statutory interpretation, that requires general words in an enumeration to be construed as similar to more specific words in the enumeration); State v. Philip Morris Inc., 2007 ND 90, ¶ 19, 732 N.W.2d (stating that under the rule of *ejusdem generis*, when general words follow specific words in statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects specifically enumerated).

5

The Court need not resolve the issue of whether the assets at issue are earnings, however, because even if they are earnings, they are not wages, and section 28-22-18 exempts only wages. See N.D.C.C. § 28-22-18.  "Wages" is not defined in chapter 28-22 of the North Dakota Century Code. It is therefore given its plain, ordinary, and commonly understood meaning.  Farmers Union Mut. Ins. Co. v. Associated Elec. & Gas Ins. Serv. Ltd., 2007 ND 135, ¶ 9, 737 N.W.2d 253 (citing N.D.C.C. § 1-02-02 which provides that "[w]ords used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained.").  Black's Law Dictionary defines "wage" as:

> Payment for labor or services, usu. based on time worked or quantity produced; specif., compensation *of an employee* based on time worked or output of production. • Wages include every form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, bonuses, and the reasonable value of board, lodging, payments in kind, tips, and any similar advantage *received from the employer*. An employer usu. must withhold income taxes from wages.

Black's Law Dictionary 1610 (8th ed. 2004) (emphasis added).  Under the plain meaning of the term, wages are specifically remuneration received from an employer.  Debtor is self-employed, and the assets at issue therefore do not constitute wages and are not exempt under section 28-22-18.

Debtor next argues that the assets at issue are exempt under section 28-25-11(1), N.D.C.C. Section 28-25-11(1) provides:

> The judge may order any property of the judgment debtor not exempt from execution in the hands of the judgment debtor or of any other person or due the judgment debtor to be applied toward the satisfaction of the judgment, except that the earnings of the debtor preceding the order cannot be so applied when it is made to appear, by the debtor's affidavit or otherwise that the earnings are necessary for the use of a family supported wholly or partly by the debtor's labor.

6

Chapter 28-25, N.D.C.C., addresses proceedings supplementary to execution. Specifically, section 28-25-11(1) exempts a judgment debtor's earnings from execution to the extent provided in the statute. It has a limited application and does not create an exemption for all debtors from all process. Simply put, it does not create a bankruptcy exemption.

Based on the foregoing, the objection lodged by Trustee Kip M. Kaler to the claimed exemptions of Debtor Michael J. Domitrovich is SUSTAINED. The exemptions are disallowed. The motion for turnover is accordingly GRANTED.

**SO ORDERED.**

Dated this January 10, 2008.

**WILLIAM A. HILL, JUDGE
U.S. BANKRUPTCY COURT**